UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RICHARD DEAN HOWE, CIVIL NO. 00-895 (ADM/JMM)

Petitioner,

v. REPORT AND RECOMMENDATION

KATHLEEN HAWK-SAWYER,
JANET RENO, and
CONSTANCE REESE,

Respondents.

Petitioner Richard Dean Howe filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Docket No. 1]. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B) and Local Rule 72.1(c). Petitioner appears pro se; Lizabeth A. McKibben, Esq. appears for the United States Attorney's Office. Because the record conclusively shows that Petitioner is not entitled to relief from this court, an evidentiary hearing is unnecessary. See Culkin v. Purkett, 45 F.3d 1229, 1234 (8th Cir. 1995).

Upon the following Findings of Fact/Report, it is recommended that the Petition for a Writ of Habeas Corpus be dismissed without prejudice as to those claims on which Petitioner has failed to exhaust his state court remedies, and the Petition should be dismissed with prejudice as to claims concerning current conditions of confinement by federal officials.

JAN 05 2001

## FINDINGS OF FACT/REPORT

### Background

Petitioner is currently imprisoned at the Federal Medical Center in Rochester, MN (FMC-Rochester). He is serving a 121-month term for Possession with Intent to Distribute Methamphetamine. Petitioner was convicted and sentenced for the federal charges on February 2, 1996. He is scheduled to be released on August 30, 2004.

First Detainer - On May 31, 1996, the Johnson County, Iowa Sheriff's Office sent a letter to FMC-Rochester, requesting that a detainer be lodged against Petitioner.[1] The letter states: "This letter is to confirm our request for a detainer on RICHARD DEAN HOWE. Howe is charged with Burglary Third Degree and Possession of an Offensive Weapon in this jurisdiction, cause number FECR34790. A certified copy of the arrest warrant is enclosed. Thanks for your assistance in this matter." [Docket No. 10, Ex. D]. The attached arrest warrant explained that Petitioner failed to appear for sentencing on the Iowa charges. Pursuant to Iowa's request, in August, 1996, FMC-Rochester officials sent a Detainer Action Letter to Johnson County, Iowa, notifying them that a detainer was lodged against Petitioner in Iowa's favor charging Burglary and Possession of an Offensive

---

[1] In Carchman v. Nash, 473 U.S. 716, 719 (1985) the Supreme Court provided the following definition of a detainer.

> A detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent. Detainers generally are based on outstanding criminal charges, outstanding parole or probation-violation charges, or additional sentences already imposed against the prisoner.

Weapon, that Petitioner is due to be released on August 30, 2003 and that Iowa would be notified sixty days prior to his actual release. [Docket No. 10, Ex. E].

Transfer under the IAD - FMC-Rochester staff, specifically BOP Director Hawk and Acting Warden Bill Hedrick, informed Petitioner of the detainer and told him that under the Interstate Agreement on Detainers Act ("IAD") he had a right to request speedy disposition of the matter. [Docket No. 10, Ex. F]; IAD,18 App. 2 § 2 Art.3(a). Petitioner made the request for disposition, he says, "believing that final disposition was required to maintain his rights after this notification." [Docket No. 5, p. 2].

Petitioner was transferred to Iowa's custody pursuant to his IAD request. On June 24, 1997, the Iowa court entered "judgment of conviction" for the two felonies and sentenced him to two indeterminate prison terms, of five year maximum lengths, to run concurrently, and he received 419 days credit toward those sentences. [Docket No. 10, Ex. I].[2]

Second Detainer - After state sentencing in June, 1997, Petitioner was returned to federal custody at FMC-Rochester. A letter dated July 11, 1997 from Johnson County, Iowa to FMC-Rochester officials states: "Mr. Howe was recently sentenced in Iowa for Burglary, 3rd Degree and Possession of an Offensive Weapon. He received two five year sentences in Iowa with those sentences to run concurrently in Iowa. By operation of Iowa law Section 903A.5 Iowa's sentences must run consecutive to Mr. Howe's federal sentence." [Docket No. 10, Ex. J]. A second Detainer Action Letter was sent to Johnson

---

[2] The record does not reveal the basis for the 419 days of credit. Petitioner alleges that it is because "his time was running under Iowa law." [Docket No. 5, p. 2].

County on July 1, 1997[3] notifying them that a second detainer had been lodged so that Iowa could acquire custody of Petitioner after completion of his federal term to serve the balance of the Iowa sentences. [Docket No. 6, Ex. E].

Over two years later, on November 24, 1999, Petitioner filed a complaint to the BOP's administrative review process. The details of this administrative process are set forth in Appendix One to this opinion. This habeas petition followed exhaustion of his administrative remedies.

Petitioner seeks habeas relief under 28 U.S.C. § 2241. He alleges that the temporary transfer of custody to Iowa officials violated the IAD and thereby deprived him of due process and equal protection under the Fifth and Fourteenth Amendments of the United States Constitution. The Petition specifically seeks the following relief: "Howe is entitled to dismissal with prejudice of the pending state detainer" or in the alternative "Howe requests that he be given credit on the state sentence, resulting in the discharge of the sentence, leading to discharge of the term and dismissal of the detainer." He also seeks relief on the ground that "Howe is being denied minimum security placement and consideration for the Title 18 U.S.C. § 3621(e) one year sentence reduction because of the detainer." We consider each below.

---

[3] It is not clear why the Detainer Action Letter is dated prior to Johnson County's letter requesting a detainer. Nonetheless, the order in which the letters were written is immaterial, as a Detainer Action Letter is merely the manner in which a lodging state is notified of a detainer lodged in their favor. The request itself constitutes the detainer.

## Summary of Recommendation

Petitioner's Complaint is based on his allegation that his temporary transfer from federal custody to the custody of Iowa state authorities was not authorized by the IAD at 18 U.S.C.App.2 § 2. As a factual matter, he contends that Iowa authorities sought him for a probation violation, and not for an "untried indictment, information, or complaint" to which the statute makes reference.[4] He relies upon Carchman v. Nash, 473 U.S. 716,720-721 (1985) for the proposition that use of the IAD for a probation violation is unauthorized. As a result, Petitioner seeks a judicial determination that the second detainer was not authorized by law, or in the alternative a determination that the state law sentence must run concurrently with the federal sentence. [Docket No. 1, p. 3A]. This relief, if appropriate, must first be sought from the state court lodging the detainer and sentence. Since it has not been, such relief is not available in federal court in connection with a Petition for a Writ of Habeas Corpus.

The petition also seeks a determination that Plaintiff should be eligible for placement in a minimum security facility and for the one-year early release portion of a drug treatment program authorized by 18 U.S.C. § 3621. He contends that the existence of the second detainer precludes him from these benefits because inmates who have detainers lodged against them are ineligible for these programs. This relief should be

---

[4] The record does not establish as a factual matter that the transfer of Petitioner under the IAD was by reason of a probation violation. Furthermore, it is not clear that the IAD which gives prisoners rights to demand speedy dispositions of detainers provides the relief claimed by Petitioner. Since resolution of these factual and legal questions is not necessary to the determination of the Petition, we reserve discussion of these issues in Appendix Two.

denied for two reasons: First, participation in such programs is not a protected liberty interest that invokes due process protection. Second, Petitioner has not met the required showing that he is prejudiced by an allegedly unlawful detainer: had the transfer under the IAD not taken place (and thus the second detainer not been lodged), Petitioner would still remain subject to the first detainer. This first detainer alone would make him ineligible for the programs. There are no allegations that this detainer was unauthorized in any way.

As a preliminary matter, the only appropriate respondent in a habeas corpus petition under 28 U.S.C. § 2241 is the Petitioner's custodian who is Warden Constance Reese. See Braden v. 30th Judicial Circuit, 410 U.S. 484, 495 (1973); Blango v. Thornburgh, 942 F.2d 1487, 1492 (10th Cir. 1991) (finding that warden was the proper respondent in section 2241 habeas action and dismissing United States Attorney General and director of Bureau of Prisons). Accordingly, the United States Attorney General, Janet Reno, and Director of the BOP, Kathleen Hawk-Sayer, should be dismissed as respondents if the Petition is not dismissed on the merits as recommended herein.

## I. State Court Remedies Have Not Been Exhausted

With his habeas petition, Petitioner requests dismissal with prejudice of the second detainer. In the alternative, Howe requests that he be given credit on the state sentence, he says, "resulting in the discharge of the sentence, leading to discharge of the term and dismissal of the detainer." [Docket No. 1, p. 3A]. This relief must be denied without prejudice because Petitoiner has not exhausted his state court remedies.

It is well established that a federal court will not entertain a petition for a writ of habeas corpus under 28 U.S.C. § 2254(b), a petition on behalf of a person in custody

pursuant to the judgment of a State court, unless the prisoner has first exhausts all available remedies in that state's courts. See 28 U.S.C. § 2254(b) (writ shall not be granted unless applicant has exhausted the remedies available in the courts of the state whose judgment is challenged); O'Sullivan v. Boerckel, 119 S.Ct. 1728, 1731 (1999); Rose v. Lundy, 455 U.S. 509 (1982). This exhaustion of state remedies requirement is based on the principles of comity and federalism; its purpose is to ensure that state courts are given the first opportunity to correct alleged federal constitutional errors raised by state prisoners. O'Sullivan, 119 S.Ct. at 1731; Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam); Rose v. Lundy, 455 U.S. at 518-19; Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988).

Petitioner brings his habeas petition under 28 U.S.C. § 2241, claiming that his custody violates the constitution and laws of the united states, rather than under 28 U.S.C. § 2254. Although § 2241 does not include a statutory exhaustion requirement comparable to that found at § 2254(b), federal courts have recognized that the principles of comity and federalism do require inmates who challenge the validity of a state's judgment under § 2241 to present their claims in that state court before seeking federal habeas corpus relief. See Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 489-90 (Alabama prisoner challenging validity of a Kentucky indictment through writ of habeas corpus under 28 U.S.C. § 2241 for violation of the U.S. Constitution must exhaust remedies in the state courts of Kentucky); Cain v. Petrovsky, 798 F.2d 1194, 1195 (8th Cir. 1986)(federal prisoner challenging validity of Kansas convictions through writ of habeas corpus under 28 U.S.C. § 2241 for violation of the IAD, a federal law, must exhaust remedies in the state courts of Kansas).

### A. Dismissal of the State Detainer

The exhaustion requirement applies to Petitioner's primary prayer for relief, the dismissal of Iowa's detainer. The Eighth Circuit has consistently held that a prisoner who challenges the validity of a state's detainer must exhaust that state court's remedies before habeas relief may be considered by a federal court. See Parette v. Lockhart, 927 F.2d 366, 366-367 (8th Cir. 1991) (Arkansas prisoner challenging a Louisiana detainer for service of a sentence must first bring his challenge to Louisiana state court before filing a federal habeas petition); Kearns v. Turner, 837 F.2d 336, 338 (8th Cir.1988) (federal prisoner challenging Missouri detainer through a federal habeas petition must first bring his challenge to Missouri state court); Breeze v. Trickey, 824 F.2d 653 (8th Cir.1987) (Missouri prisoner challenging an Indiana detainer through federal habeas petition must first exhaust his Indiana remedies); Sacco v. Falke, 649 f.2d 634, 637 (8th Cir. 1981) ("a petitioner seeking relief from state custody by means of a federal writ of habeas corpus is ordinarily required to exhaust his state remedies").[5] Thus, Petitioner must first challenge the validity of Iowa's detainer in Iowa state courts before his petition for habeas relief from this Court may be considered.

---

[5] The Court of Appeals for the Seventh Circuit has held that challenges to the validity of detainers must be brought under 28 U.S.C. § 2254 which statutorily requires exhaustion of state court remedies. See Esposito v. Mintz, 726 F.2d 371, 372 (7th Cir. 1984). The Eighth Circuit has not made such a ruling. In the cases cited above, habeas challenges to detainers were brought under both § 2254 and § 2241. Regardless of the jurisdictional statute, the Eighth Circuit cases establish that exhaustion is required prior to consideration for habeas relief.

Like Petitioner, prisoners in several of these Eighth Circuit cases were challenging the validity of detainers based on violations of the IAD. Even though their petitions were based on violations of a law of the United States, the petitioners were still required to exhaust remedies available in the states lodging the detainers against them. In Kearns, a federal prisoner asked a federal district court to declare that a detainer lodged against him by Missouri was invalid as violative of the IAD. In dismissing his petition without prejudice for failure to exhaust Missouri state court remedies, the Court explained: "state courts must be given an opportunity to address a claimed violation of the IAD before a petition for federal habeas relief may be entertained... A basic premise of the exhaustion doctrine is that state courts should be allowed the first chance to consider federal-law attacks on their own judgments." Kearns, 837 F.2d at 338.

The fact that Petitioner is a federal, rather than a state prisoner, challenging a federal law is immaterial to the exhaustion requirement. In Cain, a federal prisoner asked a federal court to vacate a Kansas conviction because of an IAD violation. The Eighth Circuit held that even though the IAD was a federal law, exhaustion of Kansas state remedies was still required. Cain, 798 F.2d at 1195. The Court elaborated: "No reason exists to presume that the State courts would not correct a violation of federal law were one to exist and we decline to intervene before allowing the State courts an opportunity to correct any violation of the IAD." Id.

The fact that Petitioner was transferred by a federal facility likewise does not alter the requirement that he exhaust Iowa state court remedies. In Breeze, a Missouri prisoner challenging an Indiana detainer argued that his petition was in fact a challenge

to Missouri's act of transferring him to Indiana and therefore he need not exhaust Indiana's remedies. Breeze, 824 F.2d at 654. The Eighth Circuit disagreed and held that a habeas petitioner must exhaust the post-conviction relief procedures in the state which sentenced him, not in the "sending state" which transfers him. It stated:

> Comity, in this context, represents a commitment on the part of the federal courts to allow the states to review decisions of their own tribunals . . . A review of his Indiana sentence in the courts of a foreign state would not satisfy the proper respect for state functions which underlies the exhaustion requirement. The requirement of exhausting state remedies is not merely a procedural technicality which a petitioner may satisfy by petitioning any state court; it is designed to protect the interests of the state whose judgment is under attack.

Breeze, 824 F.2d at 654.

**B. Concurrent Running of State Sentence**

Likewise, Petitioner's request that he be given credit on the Iowa state sentence for time spent at FMC-Rochester must first be presented in an Iowa court. Efforts to achieve credit, concurrent running or a reduction on state sentences must be raised in the courts of the sentencing state before habeas relief can be considered. See Jones v. Smith, 835 F.2d 175, 176 (8th Cir. 1987) (prisoner seeking restoration of good time credits must do so through federal habeas petition under 28 U.S.C. § 2254 and must first exhaust state remedies); Offet v. Solem, 823 F.2d 1256, 1257 (8th Cir.1987); Gentry v. Lansdown, 175 F.3d 1082, 1083 (8th Cir. 1999) (prisoner challenging state's calculation of petitioner's good time credit in federal habeas petition must first exhaust that state's remedies); Cain, 798 F.2d at 1195 (prisoner seeking habeas relief for incorrect computation of his sentence must exhaust state remedies);see e.g., Piercy v. Black, 801 F.2d 1075, 1077 (8th Cir.

1986) (Nebraska inmate seeking habeas relief on basis that Nebraska refused to allow his Iowa and Nebraska sentences to run concurrently must first exhaust Nebraska's state court remedies).

Underlying the exhaustion requirement is the fact that this Court is without authority to interpret Iowa law effecting the length of Petitioner's sentence. Interpretation of state-crediting statutes is a matter of state concern. See Travis v. Lockhart, 925 F.2d 10951097 (8th Cir. 1991) (federal court cannot interpret state crediting statute on the merits in habeas proceeding); Patino v. South Dakota, 851 F.2d 1118, 1120 (8th Cir.1988) (the interpretation of state crediting statutes is a matter of state concern and not a proper function of a federal court under its habeas corpus jurisdiction); Harkins v. Wyrick, 589 F.2d 387, 391 (8th Cir.1979) (interpretation of state crediting statute not proper function of federal habeas court).

**II. The Effects of the Detainer on Petitioner's Federal Incarceration Do Not Warrant Habeas Relief.**

Because of the detainer lodged against him after his transfer to Iowa, Petitioner is now being denied minimum security placement and consideration for a one year sentence reduction which is part of the prison's residential drug abuse treatment program (RDAP). See 18 U.S.C. § 3621(e). Thus, in addition to asking for dismissal of Iowa's detainer or credit on Iowa's sentence, Petitioner seeks a determination that he be relieved of the adverse effects of the second detainer on his current federal confinement. He contends that the improper transfer under the IAD violates his rights to due process and equal protection under the Fifth and Fourteenth Amendments. He alleges prejudice in that

the resulting detainer makes him ineligible for the BOP programs. To the extent Petitioner challenges the detainer's effect on his current federal confinement he has neither shown that his rights have been violated so as to warrant habeas relief nor that he suffers actual prejudice.

**A. Petitioner Does Not Have a Protected Liberty Interest in the BOP Programs so as to Invoke Due Process Protections.**

Petitioner avers that the improper transfer of custody violated his right to due process under the Fifth and Fourteenth Amendments. This claim must fail because Petitioner does not have a protected liberty interest in these programs so as to invoke protection of the Due Process Clause protections. "The possession of a protected life, liberty, or property interest is a condition precedent to invoking the government's obligation to provide due process of law." Stauch v. City of Columbia Heights, 212 F.3d 425, 429 (8th Cir. 2000). "To obtain a right protected by the due process clause of the Constitution, a person "must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 577 (1972) (cited with approval in Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979).

Liberty interests of prisoners are "generally limited to freedom from restraint which...imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or causes a "major disruption in his environment." Sandin v. Conner, 515 U.S. 472, 483 and 483 (1995). However, due process may be created by prison regulations that entitle prisoners to a liberty interest. See Greenholtz, 442 U.S.

at 11. In Greenholtz, the Supreme Court declared that the "mere hope" of future freedom is insufficient to invoke due process. See id. The Court drew a "crucial distinction" between being deprived of a liberty one has and being denied a conditional liberty that one desires. Id. The decisive inquiry in cases involving the due process rights of prisoners is, "at what point does the likelihood of enjoying a certain freedom become sufficiently great to vest the prisoner with a protected liberty interest in it." Matz v. Kelsch, 638 F.2d 48, 49 (8th Cir. 1981).

In the instant case, Petioner's claim to minimum security placement or early release never reached the point of becoming an entitled liberty interest. In order to be eligible for the one year early release under 18 U.S.C. § 3621(e), inmates must participate in a minimum security, community based treatment program at a "Community Corrections Center," commonly referred to as a half-way house. See 28 C.F.R. § 550.58(a). Prisoners with detainers are generally considered a flight risk, and therefore the BOP has deemed them ineligible for the community placement. See [Docket No. 10, Ex. L] (Program Statement 7310.04, p. 11: inmates with "unresolved pending charges, or detainers, which will likely lead to arrest, conviction, or confinement" are not ordinarily eligible for community corrections center placement). Iowa's detainer precludes Petitioner from participating in the half-way house program. As a result, Petitioner is also precluded from the § 3621 early release program. [Docket No. 1].

Through 18 U.S.C. § 3621(e)(2)(B) Congress authorized the BOP to reduce by one year the period of custody of an inmate who successfully completes a drug program. Congress' choice of the phrase "may be reduced by the BOP" indicates that the

early release program exists at the BOP's discretion. See 18 U.S.C. § 3621(e)(2)(B). In doing so Congress did not create an entitlement to the program. Thus, the early release program does not amount to a protected liberty interest that invokes the Due Process Clause. See Zacher v. Tippy, 202 F.3d 1039, 1041 (8th Cir.2000) ( "language of section 3621(e)(2)(B) is permissive, stating that the Bureau [of Prisons] 'may' grant early release, but not guaranteeing eligible inmates early release"); Staszak v. Romine, 221 F.3d 1344 (8th Cir. 2000)(unpublished opinion) (prisoner who completed a portion of the drug rehabilitation program did not have a liberty interest in his § 3621(e) provisional release date and he suffered no deprivation of due process rights as a result of rescission of his early release); see also Sesler v. Pitzer, 926 F.Supp. 130, 132 (D. Minn. 1996), aff'd 110 F.3d 569 (8th Cir. 1997); Wottlin v. Fleming, 136 F.3d 1032, 1036 (5th Cir. 1998); Jacks v. Crabtree, 114 F.3d 983, 986 n. 4 (9th Cir. 1997); Bush v. Pitzer, 133 f.3d 455, 457 (7th Cir. 1997)(all cases holding that 18 U.S.C. § 3621(e)(2)(B) is discretionary and does not create a protected liberty interest in early release). Thus, it is within the BOP's discretion to deem inmates with detainers ineligible for a community corrections center and thus, early release.

Other jurisdictions have held that it is not an abuse of the BOP's discretion under 18 U.S.C. § 3621(e)(2)(B) to deny sentence reductions to inmates who were deemed ineligible for a community corrections center placement. See Rublee v. Fleming, 160 F.3d 213 (5th Cir. 1998); Birth v. Crabtree, 996 F.Supp. 1014 (D. Or. 1998) (BOP has statutory authority to deny inmate with INS detainer lodged against him early release because he was unable to complete the community based treatment phase of the prison's

program). Petitioner's due process claim in this regard must fail because he has not protected liberty interest in placement at a community corrections center or early release.

The Petition does not specify the precise "minimum security placement" which Petitioner seeks. [Docket No. 1, p. 3A]. In one respect, Petitioner complains about ineligibility for the community corrections center discussed in the previous paragraph. In his supporting Memorandum Petitioner elaborated that the detainer also raises his "custody score" by three points which requires general placement in a higher security facility. [Docket No. 5, p. 3, Ex. F (Custody Classification Form)]. Title 18 U.S.C. § 3624(c) orders prison officials to place inmates in minimum security placements only "to the extent practicable." Like the early release program, minimum security placement of this type is similarly not an entitlement, thus, Petitioner has no liberty interest in minimum security placement. See Prows v. Federal Bureau of Prisons, 981 F.2d 466, 469 (8th Cir. 1992) ("[n]othing in § 3624(c) indicates any intention to encroach upon the Bureau's authority to decide where the prisoner may be confined during the pre-release period"). It is well established that an inmate has no right to be incarcerated at any particular institution and there is no due process protection regarding an inmate's facility of incarceration. See Olim v. Wakinekona, 461 U.S. 238, 244-248 (1983); Moody v. Daggett, 429 U.S. 78 (1976); Meachum v. Fano, 427 U.S. 215, 225 (1976).

**B. Even if Petitioner Established A Constitutional Violation, He Has Not Shown Prejudice so as to Warrant Habeas Relief.**

A prisoner must show that he or she has suffered actual prejudice or exceptional circumstances because of the government's violation in order to warrant

habeas corpus relief. See Davis v. United States, 417 U.S. 333, 346 (1974); Holloway v. United States, 960 F.2d 1348, 1353 (8th Cir. 1992); Phillips v. Lockhart, 994 F.2d 843, 1993 WL 152728, **1 (8th Cir. 1993)(unpublished opinion); see also Huff v. United States, 599 F.2d 860, 862 (8th Cir. 1979).

In this case, no aspect of Petitioner's incarceration is prejudiced by the second detainer. In fact, the conditions of Petitioner's confinement are not altered at all by the existence of the second detainer.

The first detainer lodged against Petitioner on August 13, 1996 was based on outstanding charges. [Docket No. 10, Ex. E (Detainer Action Letter)]. This detainer motivated prison staff to inform Petitioner of his rights under the IAD and was followed by Petitioner's request for speedy disposition of that detainer in January, 1997. The speedy disposition of the first detainer resulted in the second detainer being lodged against Petitioner for the balance of the Iowa felony sentences already imposed.

Had the allegedly improper request and disposition of the first detainer not taken place, the first detainer would still be lodged against Petitioner. This first detainer allegedly for the probation-violation, rather than the current detainer for the balance of his sentence, would equally make Petitioner ineligible for early release and minimum security placement. Petitioner's security level placement would remain the same because his custody score would still include calculation of a detainer. He would still be ineligible for § 3621 early release based on the existence of the second detainer rather than the first. Eligibility for community corrections placement and subsequently, early release, does not depend on the type of detainer or whether it involves pending charges or a sentence to be

served on tried charges. See [Docket No. 10, Ex. L, p. 11, PS 7310.04 (inmates with detainers that will lead to "arrest, conviction, *or confinement*" are ineligible for community corrections center)(emphasis added)]. The second detainer for service of the balance of his Iowa sentence has the same effect the first detainer would have had. Thus, Petitioner has failed to show that the alleged improper use of the IAD resulted in a harm which otherwise would not exist. Petitioner has not made the required showing that any improper transfer caused an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or a "major disruption in his environment." Sandin, 515 U.S. at 483. In fact, the actions made no practical difference at all.

## RECOMMENDATION

For the reasons set forth above, it is recommended as follows: The Petition for a Writ of Habeas Corpus should be denied and the action dismissed without prejudice as to those claims on which Petitioner has failed to exhaust his state court remedies; and the Petition should be denied and the action should be dismissed with prejudice as to claims concerning current conditions of confinement by federal officials.

Dated: January 5, 2001

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **January 19, 2001** written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

## APPENDIX ONE

### Exhaustion of the BOP's Administrative Review Process

The BOP has an administrative review program where inmates may seek formal review of any issue which relates to any aspect of their confinement. See 28 C.F.R. § 542.10 et seq. Petitioner's use of the administrative review process is set forth in the exhibits to the Petition [Docket No. 2, Administrative Remedies]. In his initial Request for Administrative Remedy Petitioner alleged that FMC-Rochester officials improperly released him to Iowa under the IAD which does not apply to detainers based on probation violations. He complained that the detainer lodged against him as a result of that transfer is interfering with his rehabilitation and kept him from minimum security placement and eligibility for early release. Petitioner asked that Iowa's detainer be dismissed. [Docket No. 2, Administrative Remedies, Request for Administrative Remedy, Part A - Inmate Request, 11/24/99]. In response, Defendant Warden Constance Reese advised Petitioner that the prison could not remove the detainer and told him to contact the state authorities or his attorney. [Docket No. 2, Administrative Remedies, Request for Administrative Remedy, Part B - Response, 12/15/99].

Petitioner appealed Warden Reese's denial of his request in a Regional Administrative Remedy Appeal. [Docket No. 2, Administrative Remedies, Regional Administrative Remedy Appeal, Part A - Reason for Appeal, 12/22/99]. He stated that the improper transfer under the IAD violated 28 C.F.R. § 527.31(a) which sets forth procedures used to transfer inmates other than under the IAD. The regional director reiterated Warden Reese's recommendation to contact state authorities or an attorney. [Docket No. 2,

Administrative Remedies, Regional Administrative Remedy Appeal, Part B - Response, 1/4/00].

Petitioner appealed again to the BOP's Central Office. [Docket No. 2, Administrative Remedies, Central Office Administrative Remedy Appeal, Part A - Reason for Appeal, 2/2/00]. Petitioner was told by the Administrator of National Inmate Appeals at the Central Office, the final level of review, that prison officials did not know that the detainer was for a probation violation when they released him pursuant to the IAD:

> there was no indication on the documentation submitted by the State of Iowa that the outstanding charges were for a probation violation. Notably, in January 1997, you requested that final disposition be made on the charges...Staff did not become aware that the charges were for a probation violation until you were returned to federal custody and advised staff of this information.

[Docket No. 2, Central Office Administrative Remedy Appeal, Part B - Response]. With these three grievance steps, Respondents concur that Petitioner has exhausted all levels of administrative review. [Docket No. 9, p. 8]. This habeas petition followed exhaustion of his administrative remedies.

# APPENDIX TWO

## Violations of The Interstate Agreement on Detainers Act (IAD)

### A. The Pleadings Do Not Clearly Indicate Whether Petitioner Was Transferred for Disposition of a Probation Violation Charge.

In his Complaint, Petitioner states that on he was on probation for two Iowa felonies when he was sentenced on the federal methamphetamine charges on February 2, 1996. [Docket No. 1, p. 3]. He asserts that he was transferred to Iowa authorities pursuant to the IAD on June 24th 1997 to "dispose of these two probation-violation charges." [Docket No. 1, p. 3]. However, it is not clear from the record whether the transfer should be characterized as one for disposition of a probation-violation charge or one for disposition of a pending charge for which Petitioner had not yet been convicted. The following summary of the record explains the uncertainty over the nature of the transfer.

A secondary source states that Petitioner was in fact transferred for disposition of a probation-violation matter, or at least that he was not transferred for an untried charge. The Presentence Investigation Report by U.S. District Court of Iowa indicates that in September, 1994, Petitioner pleaded guilty in Iowa for two counts of felony Burglary and Possession of an Offensive Weapon. According to that document he received a "deferred judgment" on the felonies and two years probation. [Docket No. 6, Ex. H, p. 7 (U.S. District Court, Iowa, Presentence Investigation Report)]. A probation violation hearing was held on October 23, 1995 where the state court found that Petitioner "violated the terms and conditions of his probation and concluded that an adjudication of guilt should be made and the defendant sentenced for the offenses to which he pled guilty." [Docket

No. 6, Ex. H, p. 8 (PSI Report)]. At the October 23rd hearing Petitioner was adjudicated guilty for the Iowa felonies but the court postponed sentencing pending disposition of the federal drug charges for which Petitioner is currently incarcerated. [Docket No. 6, Ex. H, p. 8 (PSI Report)]. Petitioner was convicted and sentenced for the federal drug charges on February 2, 1996. Three months later, on May 2, 1996, while in federal custody, Petitioner did not show up for a scheduled sentencing on the two Iowa felonies.

Over two years after his IAD transfer, on November 24, 1999, Petitioner brought his complaint to the BOP's administrative review process, alleging that he was improperly released to Iowa under the IAD which did not apply to his probation-violation charge. The BOP official's response apparently acknowledges that Petitioner was transferred for a probation-violation matter, not for an untried charge. It states: "Staff did not become aware that the charges were for a probation violation until you were returned to federal custody and advised staff of this information." [Docket No. 2, Central Office Administrative Remedy Appeal, Part B - Response].

However, other documents in the record suggest that Petitioner had not been technically convicted of the felonies, and that he may have been transferred to dispose of charges that were still pending. The May, 1996 letter from Johnson County, Iowa Sheriff's Office requested a "detainer on [Petitioner] [who] is *charged with* Burglary Third Degree [and] Possession of an Offensive Weapon." [Docket No. 10, Ex. D] (emphasis added). The words, "probation violation" do not appear in the documents sent to FMC-Rochester. An attached arrest warrant for 'failure to appear for sentencing' suggests that Petitioner had already been convicted on the charges the detainer was

lodged. However, the Iowa court did not enter "judgment of conviction" for the two felonies until June 24, 1997, after Petitioner was transferred under the IAD. [Docket No. 10, Ex. I (Judgment and Sentence by Iowa District Court for Johnson County)]. The Iowa court's Judgment and Sentence suggest that Petitioner had not yet been convicted of the charges.

**B. The IAD**

The IAD is an agreement among the United States and the states, including Iowa. See Iowa Stat. § 821.1; 18 U.S.C. App. 2 § 2. Under Article III of the Agreement, a prisoner incarcerated by one jurisdiction has the right to demand the speedy disposition of "any untried indictment, information or complaint" that is the basis of a detainer[6] lodged against him by another jurisdiction. 18 U.S.C.App.2 § 2, Art. III(a). Once the prisoner's request is made, the receiving state (the state in which trial is to be had) must bring the prisoner to trial within 180 days or the court must dismiss the indictment, information or complaint. 18 U.S.C.App.2 § 2, Art. III(a). Of course, if a speedy trial is required, the jurisdiction which lodged a detainer has a right to have a prisoner transferred to that jurisdiction from his custodial jurisdiction to dispose of the pending charge. 18 U.S.C. App.2 § 2 Art.IV(a).

The IAD also requires prison officials to notify prisoners that a detainer has been filed: "The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged

---

6 BOP's Program Statement defines detainer as a "formal request...for custody of an inmate upon completion of a term of imprisonment. [Docket No. 5, Ex. G, p. 2].

against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based." 18 U.S.C. App.2 § 2 Art. III (c). The IAD's goal is to avoid the uncertainties of pending criminal proceedings which obstruct prisoner treatment and rehabilitation programs. Id.

Petitioner correctly asserts that the IAD does not apply to detainers based on probation-violation charges. By its own terms and Supreme Court interpretation, the IAD applies only to to detainers lodged for any "untried indictment, information, or complaint." 18 U.S.C. App.2 § 2, Article III(a). In Carchman v. Nash, 473 U.S. 716,720-721 (1985), the Supreme Court faced the issue of whether the IAD applied to a detainer lodged on the basis of probation-violation charges. In that case, an inmate pleaded guilty and was sentenced for criminal charges in New Jersey, received a prison term and two years probation to follow imprisonment. While on probation, the inmate was convicted and sentenced on criminal charges in Pennsylvania. The Pennsylvania offenses constituted a violation of the inmate's New Jersey probation and a New Jersey court subsequently issued an arrest warrant for a probation-violation charge, lodged as a detainer with corrections officials in Pennsylvania. Carchman, 473 U.S. at 716. The inmate sought final disposition of his probation-violation charge pursuant to the IAD. New Jersey, the charging state, failed to bring him to trial within 180 days and the prisoner filed for habeas relief on the basis of the state's noncompliance with the IAD.

The Supreme Court held that the IAD did not apply to probation-violation charges. The Court interpreted the phrase "untried indictment, information or complaint" to refer to criminal charges pending against a prisoner. It explained:

> The most natural interpretation of the words "indictment," "information," and "complaint" is that they refer to documents charging an individual with having committed a criminal offense. *See Fed.Rules Crim. Proc. 3 (complaint) and 7 (indictment and information).* This interpretation is reinforced by the adjective "untried," which would seem to refer to matters that can be brought to full trial, and by Art. III's [of the IAD] requirement that a prisoner who requests final disposition of the indictment, information, or complaint "shall be *brought to trial* within 180 days." (emphasis added). . . Article V(d) [of the IAD] provides: "The temporary custody referred to in this agreement shall be *only* for the purpose of *permitting prosecution* on the charge or charges contained in 1 or more *untried* indictments, informations or complaints which form the basis of the detainer..."

Carchman, 473 U.S. at 725. The Court concluded that a detainer based on a probation -violation charge is not based on "any untried indictment, information or complaint" within the meaning of the IAD. Id. at 726 ("a probation-violation charge, which does not accuse an individual with having committed a criminal offense in the sense of initiating a prosecution, thus does not come within the terms of Art. III").

According to the Supreme Court's reasoning in Carchman, the terms of the IAD apply only when a detainer from another jurisdiction has been lodged against a prisoner on the basis of "any untried indictment, information, or complaint". See also Kiendra v. Hadden, 763 F.2d 69, 71 (2nd Cir. 1985). Based on this same reasoning, the IAD has also been held inapplicable to detainers lodged for purposes of sentencing on a previous conviction. See People v. Castoe, 86 Cal.App.3d. 484 (Cal.Ct.App. 1978) (holding that the IAD did not apply to Texas prisoner who had been convicted in California, but not sentenced, and wanted to be returned to California for sentencing); People v. Randolph, 581 N.Y.S.2d 192 (N.Y. App. Div. 1992)(IAD did not apply to detainer lodged for purposes of sentencing, therefore an inmate was not entitled to dismissal of a charge because of a state's failure to sentence him within 180 days).

However, the Eighth Circuit has not determined whether the IAD applies to a detainer for sentencing. In Kearns v. Turner, 837 F.2d 336, 338 (8th Cir. 1988), it expressly declined to rule on whether detainers lodged solely for the purpose of sentencing trigger application of the IAD. While Kearns was in custody at the United States Medical Center for Federal Prisoners (MCFP) at Springfield, Missouri, a warrant was lodged against him as a detainer for purposes of sentencing on a prior Missourri conviction for stealing. Kearns was transferred from federal to Missouri custody for sentencing but was not sentenced within 180 days. Kearns, 837 F.2d at 337. The Eight Circuit affirmed the district court's dismissal of the habeas petition for failure to exhaust state court remedies. In doing so, the court stated: "because of our disposition of this appeal, we express no opinion as to the applicability of the IAD to detainers lodged solely for the purpose of sentencing, rather than trial on an indictment, information or complaint." Id. at 338 (citing Carchman, 473 U.S. at 726).

**C. Consequences of an Improper Transfer Under the IAD**

Petitioner asserts that prison officials knew, or should have known, that the IAD did not apply to the first detainer and should not have allowed the transfer pursuant to the IAD. The BOP's Program Statement specifically states that the IAD "does not apply to probation/parole violators." [Docket No. 6, Ex. G, p. 2]. The Program Statement also requires staff to review inmates' PSI Reports to determine the existence of any pending charges. [Docket No. 6, Ex. G, p. 3 ]. Petitioner's PSI report clearly states that he was serving probation for the Iowa charges and had been adjudicated guilty on those charges. [Docket No. 6, Ex. H, p. 7 (U.S. District Court, Iowa, PSI)]. Respondents argue that they

did not know the warrant involved a probation-violation. Nor is there any evidence or allegations of bad faith by prison staff. Prison staff claim that they merely informed Petitioner of his IAD rights, even if erroneously. Petitioner himself made the decision to request speedy disposition, knowing that it involved a probation violation.

Nothing in the language of the IAD instills prisoners with rights to not be transferred. The IAD provides prisoners with rights to speedy dispositions of pending detainers. If the IAD is violated by a charging state's failure to bring a prisoner to trial on his pending charge within 180 days of the request, the IAD provides prisoners with rights to have those charges dismissed. 18 U.S.C.App.2 § 2, Art. III(a). Simply put, the IAD gives prisoners the right to a prompt trial if requested. It does not create any other rights for prisoners.

The Supreme Court's decision in Carchman v. Nash is a narrowing of a prisoner's IAD right to a prompt trial. After Carchman, prisoners do not have an IAD right to request speedy disposition of detainers based on probation-violation charges. Likewise, charging states do not have an obligation to follow up on that request by providing a speedy disposition of a probation-violation charge. The Supreme Court's holding does not provide an additional right of prisoners to *not* be transferred under the IAD where that right did not exist before. It is immaterial whether prison officials informed Petitioner of rights which did not apply to him and that Petitioner misunderstood his rights when he requested a speedy disposition of the first detainer. Neither the Carchman decision nor the IAD provide a cause of action for an erroneous transfer, whatever the underlying cause of the error.

On the contrary, prison officials have ample authority to transfer prisoners within and between jurisdictions. Inmates have no right to placement in a particular facility and may be transferred from one prison to another for any constitutionally permissible reason, or for no reason at all. See Olim v. Wakinekona, 461 U.S. 348, 245-246; Meachum v. Fano, 427 U.S. 215, 225 (1976) (state prisoners have no liberty interest in avoiding intrastate prison transfers under the Due Process Clause of the Fourteenth Amendment). In Olim, the Supreme Court held an interstate prison transfer, from a Hawaii State prison to a California State prison, does not deprive an inmate of any liberty interest protected by the Due Process Clause. It stated: "just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State. Title 18 U.S.C. § 4002 permits the Attorney General to contract with any State for the placement of a federal prisoner in state custody for up to three years.

Inmates can also be temporarily transferred from the custody of one jurisdiction to another without their consent through several means. Article IV(a) of the IAD entitles a jurisdiction which lodged a detainer for an "untried indictment, information or complaint" to have a prisoner transferred for disposition of that pending charge. 18 U.S.C. App.2 § 2 Art. IV(a). Writs of habeas corpus ad prosequendum and testifidandum allow another jurisdiction to obtain temporary custody to prosecute or to receive testimony from a person incarcerated by another jurisdiction. If Petitioner had not been transferred under the IAD, he could have bee transferred under a writ ad prosequendum to dispose of matters pending in Johnson County, Iowa.